Judgment affirmed.

2012 ME 90

**Ed FRIEDMAN et al.**

v.

**PUBLIC UTILITIES COMMISSION, et al.**

Supreme Judicial Court of Maine.

Argued: May 10, 2012.
Decided July 12, 2012.

Bruce A. McGlauflin, Esq. (orally), Petruccelli, Martin & Haddow, LLP, Portland, for appellants Ed Friedman, Kathleen McGee, Chester Gillis, Eleanor Gillis, Charlotte T. Iserbyt, Julian Holmes, Nancy Gray, Dan Burk, Deborah Burk, Andrew Fiori, Melissa Fiori, Joe Ciarroco, and Jeanne Johnson.

Jordan D. McColman, Esq. (orally), Leslie E. Raber, Esq., and Mitchell M. Tannenbaum, Esq., Maine Public Utilities Commission, for appellee Public Utilities Commission.

Catherine R. Connors, Esq. (orally), Pierce Atwood LLP, Portland, and Kenneth Farber, Esq., Central Maine Power Company, for appellee Central Maine Power Company.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1]   Ed Friedman and others (collectively, Friedman) appeal from the Maine Public Utilities Commission's dismissal of their complaint against Central Maine Power Company (CMP) regarding CMP's use of smart-meter technology.  Friedman also appeals the Commission's dismissal of those portions of the complaint that were directed at the Commission and raised constitutional concerns regarding orders previously issued by the Commission. Friedman asserts, among other issues, that the Commission erred because its dismissal of his complaint ignored the Commission's statutory mandate to ensure the delivery of safe and reasonable utility services.  *See* 35–A M.R.S. §§ 101, 103 (2011). The Commission and CMP contend that the complaint was properly dismissed in all

respects. Because we agree with Friedman that the Commission should not have dismissed the portion of the complaint against CMP addressing health and safety issues, we vacate that portion of the judgment and otherwise affirm.

## I. BACKGROUND

[¶ 2] The facts giving rise to this complaint begin with the Commission's approval of CMP's advanced metering infrastructure (AMI) project and associated ratemaking in February 2010.[1] *See Order Approving Installation of AMI Technology,* No. 2007–215(II), Order (Me.P.U.C. Feb. 25, 2010). In the year following, the Commission received a number of complaints[2] from customers against CMP regarding the AMI project. *See Notice of Investigation,* Nos. 2010–345, 2010–389, Notice (Me.P.U.C. Jan. 7, 2011) [hereinafter Jan. 7 Notice of Investigation]; *Notice of Investigation,* Nos. 2010–345, 2010–389, 2010–398, 2010–400, Notice (Me.P.U.C. Feb. 18, 2011) [hereinafter Feb. 18 Notice of Investigation]. These complaints raised concerns about the health and safety of smart-meter technology associated with the AMI project—particularly the health effects of radio frequency (RF) radiation emitted by the wireless smart meters— and regarding the technology's potential to violate individuals' privacy and property rights. *See* Jan. 7 Notice of Investigation, at 2, 4; Feb. 18 Notice of Investigation, at 2–3. The complainants expressed concerns that CMP did not allow customers the opportunity to opt out of the AMI project. *See* Jan. 7 Notice of Investigation, at 2, 4; Feb. 18 Notice of Investigation, at 2–3.

[¶ 3] In response, the Commission consolidated the complaints and initiated an investigation to "determine whether CMP's act or practice of not allowing individual customers to choose not to have a smart meter installed or to otherwise opt-out of the program is unreasonable, insufficient or unjustly discriminatory." Jan. 7 Notice of Investigation, at 1. After conducting the investigation, the Commission issued an order in two parts, known as the Opt–Out Orders. *See Order (Part I),* Nos. 2010–345, 2010–389, 2010–398, 2010–400, 2011–085, Order (Me.P.U.C. May 19, 2011) [hereinafter Opt–Out Order Part I]; *Order (Part II),* Nos. 2010–345, 2010–389, 2010–398, 2010–400, 2011–085, Order (Me. P.U.C. June 22, 2011) [hereinafter Opt–Out Order Part II]. Part I of the Opt–Out Orders, entered in May 2011, ordered CMP to provide two alternatives for customers who choose not to have the standard wireless smart meter installed on their premises and provided for charges for those customers who elect to participate in the opt-out program.[3] Opt–Out

---

1. CMP proposed providing "solid-state meters or meter modules for all 550,000 of its customer accounts, supported by a two-way communications network and a meter data management system." *Order Approving Installation of AMI Technology,* No. 2007–215(II), Order, at 1 (Me.P.U.C. Feb. 25, 2010). The stated benefits associated with the project included both operational savings, such as reduced meter reading costs, and supply-side savings through "demand response programs and time-of-use (TOU) pricing." *Id.*

2. The complaints were filed pursuant to 35–A M.R.S. § 1302 (2011).

3. The two alternatives are: "(a) An electro-mechanical meter (likely the customer's existing meter)" or "(b) A standard wireless 'smart meter' with the internal network interface card (NIC) operating in receive-only mode." *Order (Part I),* Nos. 2010–345, 2010–389, 2010–398, 2010–400, 2011–085, Order, at 2 (Me.P.U.C. May 19, 2011) [hereinafter Opt–Out Order Part I]. The charges include both a one-time charge and a recurring monthly charge. *Id.* at 3. The order also provided for a reduction in charges for low-income cus-

Order Part I, at 2–3. Part II of the Opt–Out Orders, entered in June 2011, addressed the background, analysis, and reasoning underlying the Commission's decision. *See* Opt–Out Order Part II.

[¶ 4] In July 2011, Ed Friedman and eighteen other CMP customers filed a complaint with the Commission against both the Commission and CMP pursuant to 35–A M.R.S. § 1302 (2011). Friedman's complaint explained:

> [T]he complaint is directed not only at CMP for levying what, given the facts, must be an unreasonable, unjust and discriminatory fee against ratepayers choosing to opt out of the smart meter program, but also at the PUC because of its May 19 and June 22, 2011 Orders (Part I and Part II) requiring CMP customers to pay the utility, should they, the ratepayer, elect to opt out of the program.

Friedman's complaint requested that the Commission "open an investigation" to consider "new and important evidence specifically addressing non-ionizing radiation of the type emitted by smart meters," which the complaint noted had been published since the Commission issued Opt–Out Order Part I. The complaint also cited Fourth Amendment concerns regarding privacy and "electronic trespass" and included citations to various articles and studies addressing those issues. In particular, Friedman's complaint cited a press release from the World Health Organization, dated May 31, 2011, that classified RF radiation as "possibly carcinogenic to humans." In addition to other relief, the complaint requested that the Commission order the stay of further installation of smart meters.

[¶ 5] The Commission dismissed Friedman's complaint, without a hearing, by an order entered in August 2011. *See Order Dismissing Complaint,* No. 2011–262, Order (Me.P.U.C. Aug. 31, 2011) [hereinafter Aug. 31 Order]. In its decision, the Commission concluded, "All of the issues raised by the complainants in this matter were raised by one or more of the complainants in the Opt–Out Investigation and were considered by the Commission and resolved during that investigation or in subsequent orders on motions for reconsideration." *Id.* at 5. The Commission also concluded that section 1302 does not authorize a complaint against the Commission itself. *Id.* Friedman filed a motion for reconsideration that was denied by operation of law on the expiration of the twenty-day period for processing such motions. *See* 9 C.M.R. 65–407 110–33 § 1004 (1996). Friedman appeals the dismissal of his complaint.

## II. LEGAL ANALYSIS

[¶ 6] We begin by first addressing the Commission's dismissal of those portions of Friedman's complaint directed at CMP and raising (A) health and safety and (B) privacy, trespass, and Fourth Amendment concerns. We then turn to (C) the portions of Friedman's complaint raising constitutional claims directed at the Commission itself. The Commission's dismissal of a complaint is reviewed for an abuse of discretion. *See Dunn v. Pub. Utils. Comm'n,* 2006 ME 4, ¶ 5, 890 A.2d 269 ("Only when the Commission abuses the discretion entrusted to it, or fails to follow the mandate of the legislature, or to be bound by the prohibitions of the constitution, can this court intervene." (quotation

tomers and a customer communication plan through which CMP will inform customers of

the options available. *Id.* at 3–4.

marks omitted)); *see also* 35-A M.R.S. § 1302(2).

## A. Health and Safety

[¶ 7] The Legislature has charged the Public Utilities Commission with the responsibility of regulating public utilities in Maine as part of the establishment of an overall regulatory system for public utilities operating in this state:

The purpose of this Title is to ensure that there is a regulatory system for public utilities in the State that is consistent with the public interest and with other requirements of law and to provide for reasonable licensing requirements for competitive electricity providers. The basic purpose of this regulatory system is to ensure safe, reasonable and adequate service and to ensure that the rates of public utilities are just and reasonable to customers and public utilities.

35-A M.R.S. § 101; *see also* 35-A M.R.S. § 103 (establishing the Public Utilities Commission and providing that the Commission "shall regulate public utilities in accordance with this Title"). Thus, one of the Commission's core regulatory responsibilities is to ensure that public utilities provide "safe, reasonable and adequate service" to customers, *id.* § 101.

[¶ 8] Friedman's complaint asserted that the fees CMP levied against customers opting out of the smart meter program are unjust and discriminatory, and requested that the Commission open an investigation to address both the safety of exposure to RF radiation emitted by smart meters and the privacy and electronic trespass concerns that Friedman contends the Commission had not adequately considered in the Opt–Out Orders. Section 1302 provides for the filing of complaints against a public utility:

When a written complaint is made against a public utility by 10 persons aggrieved that the rates, tolls, charges, schedules or joint rate or rates of a public utility are in any respect unreasonable or unjustly discriminatory; that a regulation, measurement, practice or act of a public utility is in any respect unreasonable, insufficient or unjustly discriminatory; or that a service is inadequate or cannot be obtained, the commission, being satisfied that the petitioners are responsible, shall, with or without notice, investigate the complaint.

35-A M.R.S. § 1302(1). Section 1302(2) provides for the dismissal of such complaints "if the commission is satisfied that the utility has taken adequate steps to remove the cause of the complaint or that the complaint is without merit."

[¶ 9] The Commission, exercising its authority under section 1302, dismissed Friedman's complaint by concluding that CMP "has taken and is taking adequate steps to remove the cause of the Complaint" because the issues raised in the portions of the complaint directed at CMP[4] had been "considered" and "resolved" in the Opt–Out Investigation, and CMP was implementing the directives in the Opt–Out Orders. Aug. 31 Order, at 5. The Commission explained:

---

4. Regarding the portions of Friedman's complaint directed at the Commission, the Commission concluded, "there is no statutory basis for a complaint of this type," citing section 1302, and dismissed those portions of the complaint as well. *Order Dismissing Complaint*, No. 2011–262, Order, at 5 (Me.P.U.C. Aug. 31, 2011) [hereinafter Aug. 31 Order]. Friedman does not appeal the portion of the Commission's decision dismissing the health and safety and privacy allegations directed at the Commission, and we see no error in this aspect of the Commission's decision.

The Opt–Out Investigation resulted in the Opt–Out Orders whereby the Commission ordered CMP to institute an opt-out option for consumers. The opt-out option addresses in a comprehensive way the issues raised by the Opt–Out Investigation complainants. All of the issues raised by the complainants in this matter were raised by one or more of the complainants in the Opt–Out Investigation and were considered by the Commission and resolved during that investigation or in subsequent orders on motions for reconsideration. CMP is currently implementing the directives contained in the Opt–Out Orders and the orders on reconsideration; thus, CMP has taken and is taking adequate steps to remove the cause of the Complaint filed by Ed Friedman, et al. Accordingly, the Complaint is dismissed as to CMP. As to the portions of the Complaint directed at the Commission, there is no statutory basis for a complaint of this type. Title 35–A M.R.S.A. § 1302 allows ten or more persons aggrieved by a public utility to make a written complaint *against that utility.* There is no mechanism in Section 1302 for such a complaint against the Commission itself. Accordingly, because there is no statutory basis for the Complaint insofar as the Complaint is directed at the Commission, the portions of the Complaint di-

rected at the Commission are dismissed as without merit.[5]

*Id.* Contrary to the Commission's conclusion, we are not persuaded that Friedman's health and safety concerns were "resolved" by the Opt–Out Orders such that CMP's implementation of the opt-out alternatives removes the cause of Friedman's complaint.

[¶ 10] To support its conclusion regarding Friedman's health and safety concerns, the Commission cites to an earlier order denying a motion for reconsideration of the Opt–Out Orders. *Id.* at 4; *see Order Denying Reconsideration,* Nos. 2010–345, 2010–389, 2010–398, 2010–400, 2011–085, Order (Me.P.U.C. Aug. 24, 2011) [hereinafter Aug. 24 Order]. The motion for reconsideration had urged the Commission to consider new health information regarding RF radiation that had not been available during the Opt–Out Investigation. The Commission concluded that the health and safety concerns raised in that motion did not "warrant reconsideration of [the Commission's] conclusions as to smart meters" because "the appropriate entity to consider potential RF health impacts is the [Federal Communications Commission] in consultation with the Food and Drug Administration." Aug. 24 Order, at 5. Yet, nowhere in the Aug. 24 Order, nor in the notices of the Opt–Out Investigation, nor in its other orders[6] addressing this issue, did the

---

**5.** In its decision, the Commission noted that the issues raised by Friedman regarding the World Health Organization's press release and reclassification were not new, as that information had been presented in and considered with an earlier motion to reconsider filed by another group of CMP customers and that motion had been denied. Aug. 31 Order, at 4; *see also Order Denying Reconsideration,* Nos. 2010–345, 2010–389, 2010–398, 2010–400, 2011–085, Order, at 3 (Me.P.U.C. Aug. 24, 2011). The Commission also noted that the privacy, trespass, and Fourth Amendment issues raised by Friedman had all been ad-

dressed in previous decisions of the Commission. Aug. 31 Order, at 4–5.

**6.** A prior decision, cited by the Commission in the order dismissing Friedman's complaint, demonstrates that the Commission declined to determine the health and safety issues:

It is impossible for the Commission to decide that smart meters are safe, or unsafe, without first reaching a conclusion regarding the health effects of RF. Consistent with our prior decisions in [related proceedings], under the doctrine of primary jurisdiction the Commission is not the appropriate entity to consider potential health effects from

Commission conclude that smart meter technology is not a credible threat to the health and safety of CMP's customers. In fact, the Commission explicitly declined to decide this issue in the Opt–Out Investigation: "In initiating this investigation, we make no determination on the merits of health, safety, privacy or security concerns, the adequacy of existing studies or which federal or state agency has the jurisdiction to make these determinations and this investigation will not include such matters." Jan. 7 Notice of Investigation, at 7. Furthermore, although in Part II of the Opt–Out Orders the Commission referenced an examination conducted by the Maine Center for Disease Control that concluded there was no "consistent or convincing evidence to support a concern for health effects related to the use of radiofrequency in the range of frequencies and power used by smart meters," the Commission ultimately reiterated its earlier statement that "it is making no determination on the merits of health, safety, privacy or security concerns with respect to wireless smart meters." Opt–Out Order Part II, at 6–7.

[¶ 11] The Commission's previous decisions demonstrate that it may have *considered,* to a limited extent, the health and safety issues Friedman raised, but it did not *resolve* those issues. Because the Commission explicitly declined to make determinations on the merits of the health and safety concerns raised by the complainants in the Opt–Out Investigation, the Commission's decision in this proceeding to treat those issues as "resolved" by that prior investigation was in error. Having never determined whether smart-meter technology is safe, the Commission is in no position to conclude in this proceeding that requiring customers who elect either of the opt-out alternatives to pay a fee is not "unreasonable or unjustly discriminatory," 35–A M.R.S. § 1302(1), such that a complaint raising those issues should be summarily dismissed.[7] We therefore vacate

RF related to the smart meter installations given that the [Federal Communications Commission] is the federal agency charged with determining RF-related emission standards and the Commission does not have institutional expertise regarding potential RF health impacts.... Accordingly, we decline to widen the scope of our investigation to include the "RF safety" of smart meters. *Order Denying Motion for Reconsideration,* No. 2010–400, Order, at 6 (Me.P.U.C. Apr. 15, 2011) [hereinafter Apr. 15 Order].

In addition, when a complainant whose complaint had been consolidated into the Opt–Out Investigation moved for reconsideration—based in part on the Commission's decision not to address, among other issues, the health and safety of the AMI technology—the Commission denied the motion concluding:

In our view, options intended to address health concerns among CMP's customers are being adequately examined in our opt-out investigation. Consequently, there is nothing in law that would compel the Commission to expend the substantial amount of resources that would be necessary to create a forum for the debate and resolution of

issues regarding the health impacts of wireless smart meters or to find another body to conduct such an investigation beyond the studies of the potential health impacts currently underway, and we decline to do so. Accordingly, we will not reconsider our initial decision to consolidate [this complaint] into our smart meter opt-out investigation without expanding that investigation (or initiating a separate investigation) to include a forum for the resolution of health impact issues.

*Order Denying Motion for Reconsideration,* No. 2010–398, Order, at 4 (Me.P.U.C. Apr. 7, 2011).

7. Although the Commission may not have the technical expertise necessary to conduct an independent investigation on this issue, the Commission's orders appear to recognize that other state and federal agencies do. As an administrative body authorized to conduct hearings and engage in fact-finding, the Commission is not precluded from considering the findings and conclusions of other state and federal agencies. *See* 9 C.M.R. 65–407 110–

the portion of the Commission's dismissal of Friedman's complaint that was directed at CMP and addressed health and safety concerns.

## B. Privacy, Trespass, and Fourth Amendment

■ [¶ 12] With respect to the privacy, trespass, and Fourth Amendment issues raised by Friedman and directed at CMP, the Commission's dismissal of these aspects of the complaint was not in error. In this portion of the dismissal order, the Commission again cited previous decisions related to the Opt–Out Investigation that addressed these issues, but here it is clear that those issues were resolved. *See* Aug. 31 Order, at 4–5. To the extent Friedman's complaint raises property rights concerns, the Commission previously resolved this issue in the Feb. 18 Notice of Investigation:

> Pursuant to [35–A M.R.S. § 304 (2011)], all public utilities are required to file their [Terms and Conditions of Service] with the Commission. Under the [Terms and Conditions] filed by

CMP, CMP has the right to select the type and make of metering equipment, and may, from time to time, change or alter the equipment.... Further, CMP has the right to access a customer's property and premises for "the purpose of reading meters, or inspection and repair of equipment used in connection with its energy, or removing its property, or for any other purpose." ...

> CMP's rights to access the property of its customers in conjunction with the installation, repair, or replacement of its meters is clear. Indeed, customers agree to allow this access by virtue of their agreement to purchase service from CMP.

Feb. 18 Notice of Investigation, at 4. Another Commission decision also previously concluded that statutory and common law trespass concerns had no merit[8] and that the Commission did not have jurisdiction to address complainants' constitutional claims against CMP.[9] *Order Denying Motion for Reconsideration,* No. 2010–400, Order, at 2–5 (Me.P.U.C. Apr. 15, 2011). Thus, with respect to the privacy, trespass,

---

30 § 927 (1996) ("The Commission or the presiding officer may take official notice of any facts of which judicial notice could be taken and, in addition, may take official notice of general, technical and scientific matters within their specialized knowledge, and of statutes, regulations and nonconfidential agency records.").

**8.** The Commission denied a motion for reconsideration that had alleged violations of several Maine statutes: 17–A M.R.S. § 402(1) (2011) (criminal trespass), 17–A M.R.S. § 511 (2011) (criminal violation of privacy), 5 M.R.S. § 4682 (2011) (violations of constitutional rights; civil actions by aggrieved persons), 14 M.R.S. § 7551–B (2011) (trespass damages), 33 M.R.S. § 458 (2011) (easements or rights-of-way; installation of utility services), 35–A M.R.S. § 2520 (2011) (affixing wires and structures; consent of building owner required), and 35–A M.R.S. § 3136 (2011) (transmission and distribution utilities

have eminent domain; approval). Apr. 15 Order, at 2–4. The Commission's order clearly addressed how and why each statute did not apply to the AMI project. *Id.* In addition, the Commission also concluded that the "RF trespass claim," in which the complainants alleged "trespass of radiofrequency into the home," was without merit because "any such trespass would be considered to be an 'intangible trespass.'" *Id.* at 5.

**9.** The Commission concluded:

> The [complaint] alleges that in allowing RF to enter homes, CMP has violated the 4th, 5th, and 14th Amendments to the United States Constitution. Claims for violations of rights guaranteed by the federal Constitution may be brought pursuant to 42 U.S.C. § 1983....

> The Commission does not have the jurisdiction to bring a suit under Section 1983 on behalf of the Complainants.

Apr. 15 Order, at 4–5.

and Fourth Amendment issues raised by Friedman and directed at CMP, the Commission did not abuse its discretion when it dismissed that portion of the complaint. The Commission had previously addressed and resolved those concerns during the Opt–Out Investigation, and CMP's implementation of the Opt–Out Orders resulting from that investigation removed the cause of these aspects of the complaint.

## C. Constitutional Claims

[¶ 13]   Finally, Friedman also raises several constitutional claims directed at the Commission, including allegations that the Opt–Out Orders violate the Fourth and Fifth Amendments of the United States Constitution, and article I of the Maine Constitution.   However, section 1302 authorizes complaints against public utilities only and is not, therefore, a proper mechanism to assert a violation of constitutional rights resulting from an earlier, final decision of the Commission.   *See* 14 M.R.S.

§§ 5951–5963 (2011) (Uniform Declaratory Judgments Act).   The constitutional claims made against the Commission in Friedman's complaint were properly dismissed as without merit.   Friedman's request for a stay pending further development of the constitutional questions is therefore moot.

The entry is:

Judgment vacated with respect to the portions of the complaint addressing health and safety issues directed at Central Maine Power, and affirmed in all other respects.   Remanded to the Maine Public Utilities Commission for further proceedings consistent with this opinion.