MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2021 ME 50
Docket:       PUC-21-36
Argued:       September 8, 2021
Decided:      October 12, 2021

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.


JENNIFER GAMAGE et al.

v.

PUBLIC UTILITIES COMMISSION et al.


HUMPHREY, J.

[¶1]  Jennifer Gamage and ten other residential customers of Central Maine Power Company (collectively, the CMP customers)[1] appeal from a Public Utilities Commission order dismissing their complaint alleging that CMP committed unreasonable practices by delivering notices threatening disconnection during the November 2020 to April 2021 winter season of the COVID-19 pandemic.  We affirm the Commission's decision.[2]

---

[1]  The other customers are Alyssa Philbrick, Karen Doughty, Melissa Deleskey, Tammi Look, Nick Pelletier, Pauline Nelson, Henry Lavender, Sarah Levine, Karen George, and Lisa McLeod.

[2]  Although we ordinarily will not hear an appeal when an issue is moot because it has lost its controversial vitality and a decision would not provide "any real or effective relief," *In re Involuntary Treatment of K.*, 2020 ME 39, ¶ 9, 228 A.3d 445 (quotation marks omitted), we address this appeal despite the passage of the winter of 2020 to 2021 to provide future guidance on a question of great public concern, *A.S. v. LincolnHealth*, 2021 ME 6, ¶ 8, 246 A.3d 157.

## I. BACKGROUND

[¶2]   The facts are entirely procedural and are drawn from the Commission's record.  On March 16, 2020, due to public health concerns arising from the COVID-19 pandemic, the Director of the Commission's Consumer Assistance and Safety Division (CASD) declared an emergency moratorium on all disconnection activity, including the issuance of disconnection notices and service disconnections, by electric transmission and distribution (T&D) and other utilities.  *Investigation of an Emergency Moratorium on Disconnection Activities*, No. 2020-81 (Me. P.U.C. Mar. 16, 2020).  Following the institution of the moratorium, the Commission opened multiple inquiries related to the duration of the moratorium and invited comments from interested persons.  The Commission considered comments submitted by the Office of the Public Advocate, eight T&D utilities, multiple other utilities, and a utility association.  The Commission received additional comments after it published a draft order.

[¶3]  Some of the T&D utilities that commented argued that rescinding the moratorium before winter would allow customers to become current on payments before the Commission's established winter-disconnection rules began to apply and would prevent customers from accruing two winters' worth of arrearages with little or no recourse for the utilities.  The Public Advocate

urged the Commission to keep the emergency moratorium in place through the winter.

[¶4]  By order dated September 17, 2020, the Commission lifted the emergency moratorium effective on November 1, 2020.  *Public Utilities Commission*, Emergency Moratorium on Disconnection Activities Due to COVID-19 Pandemic, No. 2020-81 (Me. P.U.C. Sept. 17, 2020).  In its order, the Commission summarized the requirements of its winter-disconnection rules, which restrict the utilities' ability to disconnect residential customers' service but anticipate that the customers will pay a reasonable portion of their bills to avoid accumulating arrearages.  *See* 65-407 C.M.R. ch. 815, §§ 1(C)(3), 10(L)(3)(a)(ii) (effective Feb. 23, 2020).  The Commission determined that a November 1, 2020, end date for the moratorium would allow a transition directly to the winter-period procedures, which prohibit disconnection between November 15 and April 15 without CASD approval and which require fourteen days' written notice before disconnection.  *See* 65-407 C.M.R. ch. 815, §§ 2(HH), 10(D)(2), 10(M)(4).  The Commission decided to end the moratorium because it was concerned about customers' accumulation of unmanageable debt, customers' inability to access certain federal funds in the absence of

4

disconnection notices, and the potential for an increase in rates due to the utilities' resulting uncollectible debts.

[¶5]  On December 21, 2020, well after the twenty-day reconsideration period for the September order, *see* 65-407 C.M.R. ch. 110, § 11(D) (effective Nov. 26, 2012), the CMP customers filed a complaint with the Commission alleging that they had either received notices threatening disconnection or feared receiving disconnection notices because they were behind in payments to CMP, *see* 35-A M.R.S. § 1302(1) (2021).[3]  They alleged, citing section 1302(1), that sending notices threatening disconnection during the winter of the pandemic, when COVID-19 case numbers were rising, amounted to an "unreasonable" practice by CMP that the Commission must investigate.  As relief, the CMP customers requested that the Commission

- find that CMP's disconnection practices during the winter "and the pendency of the Covid-19 pandemic" were unreasonable,

- reinstate the earlier moratorium on disconnection,

- order CMP to suspend the sending of any disconnection notices through April 15, 2021, and

- order that the reinstated moratorium be publicized.

---

[3] The customers did not allege that CMP had in fact disconnected any of their electricity.

[¶6] At the Commission's invitation, CMP filed a response on December 31, 2020. CMP argued that the relief the CMP customers sought was truly a request for the Commission to reconsider its September order to rescind the moratorium; that the CMP customers had an issue with the Commission, not CMP; and that the CMP customers' complaint was without merit because CMP had done all that was expected of it under the applicable statutes, orders, and rules. Also on December 31, the Public Advocate filed a response and urged the Commission to amend its September order to reinstate the moratorium and require that any email notice threatening disconnection include information about the programs in place for assistance with utility payments.

[¶7] On January 3, 2021, the CMP customers responded that their complaint was not an attempt to amend the September order but was instead focused on disconnection threats made as COVID-19 cases began to rise following the issuance of that order. The CMP customers argued that, in those particular circumstances, the disconnection notices were unreasonable and the Public Advocate's proposal to require CMP to send information about assistance with any threat to disconnect service would not dispel customers' fears.

6

[¶8]  Three days later, CMP responded that the relief requested by the Public Advocate went beyond the scope of the CMP customers' complaint and would affect other utilities, that its outreach process already included providing information about payment assistance, that the broad relief sought by the CMP customers would not be a proper cure for any unreasonableness of the disconnection notices, and that there is already a special, exacting process in place for winter disconnection.

[¶9]  The Commission dismissed the CMP customers' complaint as being "without merit" because the disconnection notices complied with the applicable statutes, orders, and rules.  *Id.* § 1302(2).  The Commission concluded that the Public Advocate's proposed change to the disconnection-notice requirements was not properly addressed in the CMP customers' proceeding.[4]

[¶10]  The CMP customers timely appealed to this Court.  *See* 35-A M.R.S. § 1320 (2021); M.R. App. P. 2B(c)(1), 22(a).

---

[4]  The Commission additionally recommended that customers receiving a disconnection notice contact their utility company to obtain information about assistance and payment arrangements or dial 211 to determine eligibility for assistance.

## II. DISCUSSION

[¶11] To decide this appeal, we (A) explain the standard of review; (B) summarize the applicable statute and our previous construction of it; (C) review the cases in which the Commission, and we, previously applied the statute; and (D) apply the law to review the decision on appeal.

## A.      Standard of Review

[¶12] We review a decision of the Commission deferentially and will disturb it only if the Commission has abused its discretion or failed to "follow the mandate of the [L]egislature, or to be bound by the prohibitions of the constitution." *Friedman v. Pub. Utils. Comm'n*, 2016 ME 19, ¶ 10, 132 A.3d 183 (quotation marks omitted). "While it is true that a court will defer to an administrative agency's construction of a statute administered by it, that deference must yield to the fundamental approach of determining the legislative intent," and we look "to the wording of the statute and the legislative objective of the statute." *Agro v. Pub. Utils. Comm'n*, 611 A.2d 566, 569 (Me. 1992) (quotation marks omitted). Thus, we will review whether the Commission erred in construing 35-A M.R.S. § 1302 or abused its discretion in dismissing the complaint.

## B. Previous Statutory Construction

[¶13] By statute, ten aggrieved persons may file a written complaint with the Commission to allege that a "practice or act of a public utility is in any respect unreasonable, insufficient or unjustly discriminatory." *Id.* § 1302(1). When such a complaint is filed, the Commission, "being satisfied that the petitioners are responsible, shall, with or without notice, investigate the complaint." *Id.*

[¶14] If, however, "the commission is satisfied that the utility has taken adequate steps to remove the cause of the complaint or *that the complaint is without merit*, the complaint may be dismissed." *Id*. § 1302(2) (emphasis added). The term "without merit" has particular meaning in this context: "the phrase 'without merit' must be understood to mean that there is no statutory basis for the complaint, i.e., that the PUC has no authority to grant the relief requested or that the rates, tolls, or services are not 'in any respect unreasonable, insufficient, or unjustly discriminatory . . . or inadequate.'" *Agro*, 611 A.2d at 569 (quoting 35-A M.R.S. § 1302(1)). Thus, although the Commission must "promptly and seriously consider consumer complaints brought to its attention through a section 1302 complaint," and may not "ignore

complaints on the basis of expediency," the complaint may be dismissed if it does not have "some substantive merit." *Id.*

[¶15] If an issue has already been considered and determined not to have merit, we will affirm the Commission's decision to dismiss a ten-person complaint raising that issue. *See Friedman v. Pub. Utils. Comm'n*, 2012 ME 90, ¶ 12, 48 A.3d 794. A complaint should not be dismissed, however, if it contains any issues that were considered but *not* determined. *See id.* ¶¶ 9-11.

## C. Cases Applying Section 1302(2)

[¶16] In only two cases have we reviewed the Commission's dismissals of complaints based on section 1302(2). *See Agro*, 611 A.2d 566; *Friedman*, 2012 ME 90, 48 A.3d 794. In the first, the complaint alleged that a telephone company was charging residents in the Gray/New Gloucester area tolls for calling Portland, while not charging residents in similarly situated communities, and that communities surrounding Portland had to pay tolls to call the Gray/New Gloucester area but not to call Portland. *Agro*, 611 A.2d at 568. The Commission did not conclude that there were no cognizable issues or that the complaint lacked a factual basis, but it nonetheless dismissed the complaint, concluding that the issues raised should be addressed in other matters that were pending or anticipated: (1) a matter opened to consider

alternative service plans to address geographically based rate inequities, (2) a matter addressing allegations of excess profits by the telephone company, and (3) an anticipated comprehensive rate case. *Id.* at 568-69.

[¶17]  We held in *Agro* that the Commission had dismissed the complaint based on expediency—not a lack of merit—in violation of section 1302(2). *Id.* at 569-70.  We concluded that "the PUC cannot dismiss outright . . . a complaint that the PUC admits has substantive merit, solely on the basis that it does not deserve separate consideration." *Id.* at 570.

[¶18]  In our other opinion reviewing the Commission's application of section 1302(2), we reviewed the Commission's dismissal of a complaint that sought, among other things, an investigation into health and safety issues arising from CMP's installation of smart-meter technology that emitted radio frequency radiation.  *Friedman*, 2012 ME 90, ¶¶ 1-2, 48 A.3d 794.  The Commission concluded that it had considered and resolved the issue in an earlier investigation into whether CMP's refusal to allow individual customers to opt out of smart-meter installation was unreasonable, insufficient, or unjustly discriminatory. *Id.* ¶¶ 3, 9.

[¶19]  The Commission had expressly stated, in initiating the opt-out investigation, that it was making "no determination on the merits of health,

safety, privacy or security concerns." *Id.* ¶ 10 (quotation marks omitted).  And in its order on a motion for reconsideration of the decision in the opt-out proceeding, the Commission stated that it would not consider the health and safety concerns because the appropriate entity to consider the health impacts was the Federal Communications Commission in consultation with the Food and Drug Administration.  *Id.*  Because the issue had specifically been excluded from the Commission's consideration in the earlier proceeding, we concluded that that proceeding did not resolve the issues raised in the new complaint and vacated the portion of the Commission's decision that dismissed the complaint's request for an investigation into the health and safety issues.  *Id.* ¶ 11.

[¶20]  As to other issues that were both considered *and* determined in the opt-out proceeding, however, we affirmed the dismissal of the ten-person complaint.  *See id.* ¶ 12.  As to those matters, it was "clear that those issues were resolved." *Id.*

D.    **Review of the Commission's Decision**

[¶21]  Here, unlike in *Agro*, another proceeding has already occurred, and we can, as in *Friedman*, determine whether the Commission, in that previous proceeding, concluded that the issues later raised in the ten-person complaint

lacked merit. In the previous proceeding, which resulted in the Commission's September order, the Commission determined both (1) that the pandemic-induced disconnection moratorium would end on November 1, 2020, and (2) that the issuance of disconnection notices would be allowed as part of the procedures set forth in the Commission's winter-disconnection rules.

[¶22] The subsequently filed ten-person complaint alleged no conduct violating the Commission's order or the applicable statutes or regulations. Because there was no violation of law and the argument for an extended moratorium on disconnections had been determined in the earlier proceeding, the Commission did not err or abuse its discretion in dismissing the complaint as "without merit." 35-A M.R.S. § 1302(2); *see Friedman*, 2012 ME 90, ¶ 12, 48 A.3d 794.

[¶23] Although the number of COVID-19 cases undisputedly increased after the Commission's September order, the order was premised not on ever-fluctuating case counts but on transitioning from the circumstances that led to the moratorium, when "schools and businesses were being shuttered, and people were being asked to stay home," toward "something of a new normal." The transition to which the September order was directed was underway despite the spread of the disease, and the Commission did not err or abuse its

discretion in dismissing the ten-person complaint based on its previous determination that the allegations raised therein were without merit. *See* 35-A M.R.S. § 1302(2).

The entry is:

> Decision of the Public Utilities Commission affirmed.

---

Peter L Murray, Esq. (orally), Murray, Plumb & Murray, Portland; Alex S. Parker, Esq., Trafton, Matzen, Belleau & Frenette, LLP, Auburn; and Sumner H. Lipman, Esq., Law Office of Sumner Lipman, Scarborough, for appellants Jennifer Gamage et al.

Amy Mills, Esq. (orally), Jordan McColman, Esq., and Mitchell Tannenbaum, Esq., Public Utilities Commission, for appellee Public Utilities Commission

Carlisle Tuggey, Esq., and Richard P. Hevey, Esq. (orally), Avangrid Service Company, Augusta, for appellee Central Maine Power

Public Utilities Commission Docket Number 2020-350
For Clerk Reference Only