2006 ME 4

**David DUNN**

v.

**PUBLIC UTILITIES COMMISSION.**

Supreme Judicial Court of Maine.

Argued: Nov. 16, 2005.
Decided: Jan. 18, 2006.

Edward G. Dardis, Esq. (orally), Douglas Houston, Esq., Howard & Bowie, Damariscotta, for appellant.

Joanne B. Steneck, Esq. (orally), General Counsel, Public Utilities Commission, Augusta, William S. Harwood, Esq., Nora R. Healy, Esq. (orally), Verrill & Dana LLP, Portland, (for Biddeford & Saco Water Co.), for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] David Dunn appeals from a decision of the Public Utilities Commission authorizing the Biddeford and Saco Water Company (BSWC) to charge reinforcement fees pursuant to Commission Rule 650. The Commission reversed the decision of the Customer Assistance Division (CAD) in which CAD concluded that BSWC is not authorized to charge reinforcement fees. Dunn contends that Rule 650 does not authorize the imposition of such fees on an anticipatory basis. We disagree, and affirm the judgment.

## I. BACKGROUND

[¶ 2] In 1999, the City of Saco developed a comprehensive plan that designated the area of Buxton Road for residential growth, anticipating that hundreds of new housing units would be constructed in the area. BSWC services the water needs for the Buxton Road area. In 2000, engineers hired by BSWC undertook an evaluation of the water system in that area and concluded that although the water pressure in the area was currently adequate, water main reinforcement would become necessary as increased demand from new residential customers in the area would likely decrease water pressure to levels below the minimums mandated by the Commission Rules. *See* 9 C.M.R. 65 407 620–4 § 2(I) (1999). The engineers therefore determined that when 185 new customers come online in the area, the addition of those new customers will require that 4550 feet of twelve-inch reinforcing main, or 24.6 feet per customer, will have to be installed.[1] Based on these recommendations, in 2000, BSWC began charging all new customers $2460 per lot, the estimated cost of each customer's equal share of water main reinforcement.[2]

[¶ 3] David Dunn owns and operates the Willow Grove Development, an eight-lot development on Buxton Road. Dunn refused to pay the reinforcement fee for his eight lots, and instead filed a complaint with CAD in June of 2004. CAD concluded that BSWC is permitted to impose such fees only for current reinforcement needs rather than projected future needs like those anticipated by BSWC in the Buxton Road area, and thus ordered BSWC to refund the reinforcement fees it had already collected.

[¶ 4] BSWC appealed CAD's decision to the Commission. *See* 9 C.M.R. 65 407 650–13 § 6(D) (1999). The Commission reversed the CAD decision, and concluded that, pursuant to Commission Rule 650, 9 C.M.R. 65 407 650–6–8 § 2(A), (G) (1999), BSWC is authorized to impose the reinforcement fees. Dunn then filed this appeal pursuant to 35–A M.R.S.A. § 1320 (1988).

## II. DISCUSSION

[¶ 5] Dunn contends in this appeal that the Commission erred as a matter of law in determining that Commission Rule 650 authorizes BSWC to charge him a reinforcement fee. Our review of a Commission decision is deferential. *See Am. Ass'n of Retired Perss. v. Pub. Utils. Comm'n,* 678 A.2d 1025, 1029 (Me.1996). We will sustain findings of fact issued by the Commission unless not supported by substantial evidence in the record. *Id.*

---

1. In this case, "reinforcement main" refers to the construction of a new water main parallel to the existing water main, which provides additional water to the service area in conjunction with the existing main. It can be substantially less expensive to reinforce an existing main rather than replace it with a new, larger main.

2. The reinforcement fee was later reduced to $2100 per lot.

"Only when the Commission abuses the discretion entrusted to it, or fails to follow the mandate of the legislature, or to be bound by the prohibitions of the constitution, can this court intervene." *Id.* (quotation marks omitted). Thus, only when a Commission decision is "unreasonable, unjust or unlawful in light of the record" do we vacate a decision of the Commission. *Guilford Transp. Indus. v. Pub. Utils. Comm'n,* 2000 ME 31, ¶ 6, 746 A.2d 910, 912 (quotation marks omitted). The Commission's interpretation of its own rules is reviewed for errors of law. *Trask v. Pub. Utils. Comm'n,* 1999 ME 93, ¶ 7, 731 A.2d 430, 432.

[¶ 6] Rule 650 provides, in pertinent part:

All water main extensions, appurtenances and service drops constructed pursuant to this rule shall be owned, maintained and, except as provided below, replace[d] by the utility. The actual construction shall be done by the utility or by an agency acceptable to it under the utility's supervision. *If replacement is required because of an increase in demand by a new or existing customer or customers and not because the main should be or must be retired, the customers presenting the increased demand shall pay for a reasonable portion of the replacement* pursuant to section 3 as if the replacement were a new main extension or service drop, but the utility shall invest an additional amount based on the difference in average customer revenues for the old and new meter sizes. A reasonable portion of the replacement facilities shall be determined in the same manner as provided in section 2(G).

9 C.M.R. 65 407 650–6 § 2(A) (1999) (emphasis added). Section 2(G) further provides, in pertinent part:

*If the demand for water expected from the customers to be served by the extension requires existing mains leading to the extension to be replaced or supplemented by parallel mains, or requires booster pumps or other appurtenances in order to satisfy the demand or to maintain adequate pressure along the extension or along the main leading to the extension, a reasonable portion of these costs shall be included in the price of the water main extension.* In determining a reasonable portion the utility shall consider whether the need for new replacement or parallel facilities is caused entirely by the customers to be served by the main extension; the age of existing facilities and the need for replacement for other reasons; the marginal cost of providing the additional capacity if existing facilities need present replacement or replacement in the near future; any increases in the quality of service to other customers by the addition or replacement facilities; and, in the case of a review pursuant to section 6(D), the prudence of the utility in determining the amount of existing capacity.

9 C.M.R. 65 407 650–7–8 § 2(G) (1999) (emphasis added).

[¶ 7] Dunn contends that only those customers causing increased demand such that reinforcement is currently necessary may be charged a reinforcement fee. Because no current need exists to reinforce the mains serving Buxton Road, Dunn contends, neither Rule 650 nor any other provision authorizes BSWC's charge of anticipated and speculative future reinforcement fees. Dunn apparently does not dispute that Rule 650 authorizes utility companies to charge reinforcement fees when necessary to respond to increased demand. Dunn also does not challenge the Commission's factual finding that increased demand is certain to occur, and that that

demand will necessitate reinforcement of the water main in the Buxton Road area, and we do not disturb such findings.

[¶ 8] Likewise, BSWC and the Commission do not dispute that the increased demand on the Buxton Road area water mains has not yet reached the 185–customer point at which reinforcing the mains must be accomplished in order to maintain minimum water pressure levels. Thus, the issue for decision is *when* such fees may be charged, and more specifically, whether such fees may be charged prior to the point of actual need.

■ [¶ 9] The plain language of Rule 650 unambiguously authorizes utility companies to charge new customers for the costs of reinforcement due to increased demand. Further, it plainly provides for the costs of modifying water mains to keep up with increased demand on water services to be borne by the new customers creating that demand. The Rule is designed to allow the utility to plan for expansion of services before that expansion is completed. It would indeed be illogical if BSWC were limited to charging only the 186th customer for the entire amount of the reinforcement costs, thereby allowing new customers number one through 185 to avoid any obligation to contribute toward the water demand they combined to create. Likewise, it would make little sense for BSWC to wait and begin charging new customers from the 186th customer on, forcing existing customers to suffer poor water service while the repairs are being completed after the need arises. We find nothing unreasonable, unjust, or unlawful in the Commission's interpretation of Rule 650 to allow a utility company to rationally plan for the expansion of its services, and to collect reinforcement fees from customers who present increased demand that will lead to the need for reinforcement of water mains, as the Commission found in this case.[3]

The entry is:

Judgment affirmed.

---

3. We do not address Dunn's alternative contention that the Commission erroneously granted BSWC an exemption from the provisions of Rule 650.