MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2023 ME 8
Docket:         PUC-22-8
Argued:         November 3, 2022
Decided:        January 24, 2023

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON, and LAWRENCE, JJ.

MAINE COALITION TO STOP SMART METERS

v.

PUBLIC UTILITIES COMMISSION et al.

STANFILL, C.J.

[¶1]  The Maine Coalition to Stop Smart Meters appeals from an order of the Public Utilities Commission denying its petition for reconsideration of an earlier order approving revised terms and conditions for the Central Maine Power (CMP) smart-meter opt-out program.[1] *See* 35-A M.R.S. § 1320(1) (2022). The revised terms and conditions allow CMP to offer non-communicating solid-state meters, instead of electromechanical (analog) meters, as an alternative to smart meters.  The Coalition argues the Commission's finding that solid-state meters are safe is not supported by substantial evidence and its decision to approve the revised terms and conditions was arbitrary and

---

[1]  The Coalition also moved to stay the corrected order and, for purposes of acting on the motion to stay, moved for us to take judicial notice of public statements made by CMP.  We denied both motions.

2

capricious, constituting an abuse of discretion. We disagree and affirm the Commission's order.

## I. BACKGROUND

[¶2] In 2010, CMP proposed the advanced metering infrastructure project, which sought, among other things, to provide all CMP customers with wireless two-way communicating meters, known as smart meters. *Friedman v. Pub. Utils. Comm'n* (*Friedman II*), 2016 ME 19, ¶ 2, 132 A.3d 183. The aim of the project was to allow CMP to "conduct automated and remote meter readings and to communicate with customers' meters." *Id.* After the project was approved, some customers "raised concerns about the potential health effects of radiofrequency signals (RF) emitted by smart meters." *Id.* The Commission ordered an investigation and ultimately issued a two-part order instructing CMP to create an opt-out program that would allow customers to choose a smart-meter alternative and pay an associated fee.[2] *Id.* The Commission's investigation concluded with a determination that smart meters do not pose a credible threat to the health and safety of CMP's customers and are therefore safe. *Id.* ¶ 6. On appeal, we affirmed those findings. *Id.* ¶¶ 9, 14, 17.

---

[2] According to the Coalition, since the start of the opt-out program, the analog meter has been the preferred smart-meter alternative for opt-out customers with health and safety concerns related to low-level RF radiation.

[¶3]  In February 2019, CMP requested approval to revise the terms and conditions of the smart-meter opt-out program to allow it to install solid-state meters instead of analog meters for opt-out customers.  Solid-state meters are smart meters with the transmitting function disabled.  This means that they must be read manually and do not transmit data.  CMP proposed this change because analog meters are no longer manufactured and are becoming obsolete. After several rounds of questions from the Commission, a public comment period, and additional questions and comments from the Commission and the Office of the Public Advocate regarding the safety of solid-state meters, the Commission issued an order, which it later corrected,[3] approving the revised terms and conditions and allowing CMP to install solid-state meters instead of analog meters for opt-out customers who choose not to have wireless smart meters installed on their premises.  The Commission found that the plan contained in the revised terms and conditions would provide safe, reasonable, and adequate facilities and service, and that "the associated charges [were] just and reasonable."

[¶4]  In July 2021, the Coalition filed a petition for reconsideration of the

---

[3]  The Commission corrected the original order to reflect two amendments that had been made to the paragraph numbers for the terms and conditions.

corrected order. The Coalition asserted the corrected order contained "errors of law, errors of fact, arbitrary and capricious reasoning and ultimately demonstrate[d] an abuse of discretion." In its December 2021 order on reconsideration, the Commission concluded that the corrected order did not contain errors of law or fact and was based upon sufficient evidence. In addition, it determined that the Coalition did not present new evidence "that warrant[ed] re-opening or clarifying the proceeding." This appeal followed. *See* 35-A M.R.S. § 1320(1).

## II. DISCUSSION

[¶5] The Coalition argues that the Commission's finding that solid-state meters are safe is not supported by substantial evidence and that the Commission's decision to approve the revised terms and conditions was arbitrary and capricious, constituting an abuse of discretion.

[¶6] The Commission is charged with regulating public utilities in Maine, *Friedman v. Pub. Utils. Comm'n* (*Friedman I*), 2012 ME 90, ¶ 7, 48 A.3d 794, and "[t]he basic purpose of this regulatory system . . . is to ensure safe, reasonable and adequate service," 35-A M.R.S. § 101 (2022). To decide whether CMP's proposal to replace older analog meters with solid-state meters would result in safe, reasonable, and adequate facilities and service, *see*

35-A M.R.S. §§ 101, 301(1) (2022), the Commission had to first find that solid-state meters are safe. In this context, safety is measured under the "credible threat standard," which requires an evaluation of whether a "threat or hazard constitutes an acceptably safe level of exposure, balancing the potential for harm against the usefulness and pervasiveness of the technology at issue." *Friedman II*, 2016 ME 19, ¶ 8, 132 A.3d 183 (quotation marks omitted).

[¶7] "We will sustain findings of fact issued by the Commission unless [they are] not supported by substantial evidence in the record." *Dunn v. Pub. Utils. Comm'n*, 2006 ME 4, ¶ 5, 890 A.2d 269. This standard of review "requires us to determine whether there is any competent evidence in the record to support a finding." *Friends of Lincoln Lakes v. Bd. of Env't Prot.*, 2010 ME 18, ¶ 14, 989 A.2d 1128.

[¶8] The Commission used several data points to support its determination that solid-state meters are safe and emit RF radiation at levels similar to the RF radiation emitted by analog meters. These included CMP's March 2021 response to questions from the Commission; testing performed by a New York utility, Central Hudson Gas and Electric;[4] a white paper by the

---

[4] The testing was not performed in connection with this litigation.

manufacturer of the solid-state meter that CMP uses;[5] and a study by True North Associates, a consulting agency that the Office of the Public Advocate retained in 2013.[6] In its March 2021 response to questions from the Commission, CMP explained that solid-state meters comply with relevant safety standards and emit RF radiation at levels similar to the RF radiation emitted by analog meters—indicating that they are just as safe as analog meters. The Central Hudson testing results supported CMP's statement that solid-state and analog meters emit RF radiation at similar levels. The Itron white paper explained that the solid-state meters CMP uses emit far less RF radiation than other devices commonly found in the home. The True North Associates study concluded that smart meters emit RF radiation at levels below Federal Communications Commission limits.

[¶9] In addition, the Commission considered and addressed evidence that the Coalition presented. This included an article by Federica Lamech and a report from New Hampshire's Commission to Study the Environmental Health Effects of Evolving 5G Technology. Ultimately, the Commission

---

[5] CMP has been using the solid-state meters made by Itron to replace analog meters; the Itron white paper is a technical reference guide to Itron's solid-state meter.

[6] The True North Associates study was produced in connection with the *Friedman* litigation and measured RF radiation from a sample of smart meters.

determined the Lamech article was not credible and the New Hampshire report was not determinative or persuasive in this matter.

[¶10] The Coalition also asserts that the Commission should have considered evidence presented by the petitioners in a case before the United States Court of Appeals for the District of Columbia Circuit. *See Env't Health Tr. v. Fed. Commc'ns Comm'n*, 9 F.4th 893, 914 (D.C. Cir. 2021).[7] The evidence that the petitioners presented in that case was not part of the evidentiary record before the Commission in this case, and we therefore will not review it. *See New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 448 A.2d 272, 291 (Me. 1982).

[¶11] In short, contrary to the Coalition's assertions, there was competent evidence in the record to support the Commission's finding that solid-state meters are safe.

---

[7] Contrary to the Coalition's assertions, the District of Columbia Circuit Court decision is not controlling legal authority on any issue before the Commission or this Court. In that opinion, the court simply remanded a Federal Communications Commission order that terminated a notice of inquiry into the adequacy of Federal Communications Commission guidelines for RF radiation exposure. *See Env't Health Tr. v. Fed. Commc'ns Comm'n*, 9 F.4th 893, 914 (D.C. Cir. 2021). Indeed, the court emphasized that it took "no position in the scientific debate regarding the health and environmental effects of RF radiation," and "merely conclude[d] that the [Federal Communications] Commission's cursory analysis of material record evidence was insufficient as a matter of law." *Id.* at 914.

[¶12]  The Commission then concluded that CMP's plan would provide safe, reasonable, and adequate facilities and service.  "Our review of a Commission decision is deferential," and we will intervene only when a decision is "unreasonable, unjust or unlawful in light of the record."  *Dunn*, 2006 ME 4, ¶ 5, 890 A.2d 269 (quotation marks omitted).  In this case, the Commission acknowledged CMP's practical need to replace analog meters because manufacturers are no longer producing them and they no longer meet applicable accuracy standards.  This reality, paired with the Commission's safety findings, led the Commission to determine that the proposed changes to the terms and conditions would provide safe, reasonable, and adequate facilities and service.  This conclusion was not arbitrary or unreasonable, unjust, or unlawful in light of the record.  To the contrary, the Commission's conclusion was logical and supported by competent evidence in the record.

The entry is:

> Order of the Public Utilities Commission
> affirmed.

Scott L. Sells, Esq. (orally), Portland, for appellant Maine Coalition to Stop Smart Meters

Jordan McColman, Esq. (orally), and Amy Mills, Esq., Maine Public Utilities Commission, Augusta, for appellee Maine Public Utilities Commission

Carlisle Tuggey, Esq., and Timothy D. Connolly, Esq. (orally), Central Maine Power Company, Augusta, for appellee Central Maine Power Company

Public Utilities Commission case number 2019-00044
<small>FOR CLERK REFERENCE ONLY</small>