MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:        2026 ME 10
Docket:          PUC-25-60
Argued:          December 11, 2025
Decided:         February 5, 2026

Panel:           STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

ELLSWORTH ME SOLAR, LLC

v.

PUBLIC UTILITIES COMMISSION

CONNORS, J.

[¶1] Ellsworth ME Solar, LLC, appeals from an order of the Public Utilities Commission denying its petition for a good cause exemption from the 2024 Commercial Operation Date (COD) deadline in Maine's Net Energy Billing statute, 35-A M.R.S. § 3209-A(9) (2025), as well as the Commission's decision not to grant Ellsworth Solar's petition to reopen the record pursuant to 65-407 C.M.R. ch. 110, § 11(D) (2025).  We affirm.

## I.  BACKGROUND

### A.    The Applicable Law

#### 1.    The Statutory Framework

[¶2] Much of the relevant legal background is set forth in *Snakeroot Solar, LLC v. Pub. Utils. Comm'n*, 2025 ME 64, 340 A.3d 99, a previous appeal of a denial

2

of a petition for a good cause exemption.  As discussed in more detail in that decision, in 2019, the Legislature expanded the eligibility for participation in Maine's net energy billing (NEB) program to include customers with an interest in a renewable energy (solar) facility with a generating capacity of up to five megawatts.  *Id.* ¶ 2; P.L. 2019, ch. 478, §§ A-3, A-4, codified as amended at 35-A M.R.S. § 3209-A and 35-A M.R.S. § 3209-B (2025) (2019 NEB Act).[1]

[¶3]  The 2019 NEB Act prompted what has been referred to as the "solar gold rush"—a sharp increase in the development of solar projects seeking to connect to the grid, leading to a steep increase in electricity rates charged to consumers.  *Snakeroot Solar,* 2025 ME 64, ¶ 3, 340 A.3d 99; Legis. Rec. H-750 to -51 (1st Spec. Sess. 2021).  As a result, in 2021, the Legislature added new eligibility criteria for projects between two and five megawatts.  P.L. 2021, ch. 390 (effective Oct. 18, 2021), codified as amended at 35-A M.R.S. § 3209-A(7) (2021 NEB Amendment).  The 2021 NEB Amendment established a series of requirements for projects to be eligible to participate in the NEB program, one of which was that the project have a Commercial Operation Date (COD) on or

---

[1]  "Net energy billing" is "a billing and metering practice under which a customer is billed on the basis of the difference between the kilowatt-hours delivered by a transmission and distribution utility to the customer over a billing period and the kilowatt-hours delivered by the customer to the transmission and distribution utility over the billing period, taking into account accumulated unused kilowatt-hour credits from the previous billing period."  35-A M.R.S. § 3209-A(1)(C) (2025).  It is a renewable energy incentive program "intended to encourage electricity generation from renewable resources."  *Conservation L. Found. v. Pub. Utils. Comm'n*, 2018 ME 120, ¶ 2, 192 A.3d 596.

before December 31, 2024.  35-A M.R.S. § 3209-A(7); *Snakeroot Solar*, 2025 ME 64, ¶ 4, 340 A.3d 99.

[¶4]  The 2021 NEB Amendment included a still applicable provision that permits the Commission to grant exemptions from those requirements:

> An entity proposing [a project for] the development of a distributed generation resource that does not meet one or more of the requirements of this subsection may petition the commission for a good-cause exemption due to external delays outside of the entity's control, which the commission may grant if it finds that, without the external delays, the entity could reasonably have been expected to meet the requirements.

35-A M.R.S. § 3209-A(7).

[¶5]  In 2023, the NEB program was amended again, this time to require that projects between one and two megawatts satisfy the 2024 COD deadline. P.L. 2023, ch. 411 (effective Oct. 25, 2023), codified as amended at 35-A M.R.S. § 3209-A(9) (2023 NEB Amendment).[2]

**2.**   ***Snakeroot Solar***

[¶6]   In *Snakeroot Solar,* a solar energy company appealed from the Commission's denial of a request for a good cause exemption under the 2021

---

[2]  Most recently, the Legislature enacted a December 31, 2025, cutoff date for new NEB entrants, reduced the tariff credits received by participating projects over three megawatts and their subscribers, and imposed a monthly fee on certain existing projects receiving kilowatt-hour credits, to begin on January 1, 2026.  P.L. 2025, ch. 430 (effective Sept. 24, 2025), codified as amended at 35-A M.R.S. § 3209-A(10)(11), 32-A M.R.S. § 3209-B(9) (2025), and 35-A M.R.S. § 3209-F (2025).

NEB Amendment for a project with a generating capacity of 4.98 megawatts. *Snakeroot Solar*, 2025 ME 64, ¶ 1, 340 A.3d 99. We affirmed, concluding, as relevant to the instant appeal, that (1) "external delays" within the meaning of the statutory framework mean events that are outside of the interconnection process (connecting the facility to the grid)—"a process that is typically 'long, complicated, . . . and subject to frequent interruptions'"; and (2) as reflected by the statute's use of discretionary "may" language, the good cause exemption is not an entitlement. *Id.* ¶¶ 29-32, 34 (citation omitted).

[¶7] Also relevant to the instant appeal, we rejected Snakeroot Solar's argument that the Commission's denial of the exemption was arbitrary because the Commission had granted an exemption to another developer, Pembroke Solar LLC, noting that "Pembroke's circumstances at the time it petitioned for a good-cause exemption were markedly different than Snakeroot's" because "Pembroke experienced an eleventh-hour, unanticipated change in the utility's equipment procurement schedule" that "unexpectedly increased from thirty-four to eighty-one weeks," pushing the COD well beyond the 2024 deadline. *Id.* ¶ 42.

**B.    Project History**

[¶8]  The following facts and procedural background are drawn from the Commission's order dated December 13, 2024, and the administrative record. *See Off. of the Pub. Advoc. v. Pub. Utils. Comm'n*, 2023 ME 77, ¶ 2, 306 A.3d 633.

[¶9]  Ellsworth Solar initiated a project to develop a ground-mounted solar photovoltaic generating facility with a capacity of 4.98 megawatts and submitted an interconnection application to Versant Power, the transmission and distribution utility to which the project would connect, in May 2020.  Both parties signed an interconnection agreement on February 17, 2021.

[¶10]  In March 2021, Versant notified Ellsworth Solar that the project would need to undergo a cluster study.[3]  In September 2022, Ellsworth Solar's project received Section I.3.9 approval, and Ellsworth Solar signed an NEB agreement with Versant on December 19, 2022.

---

[3] As explained in *Snakeroot Solar*, where multiple projects with a combined generating capacity of twenty megawatts or more propose to interconnect in a defined local area, ISO New England, the governing independent system operator of the transmission system, may require a transmission study, called a "cluster study," for all the projects with a capacity greater than one megawatt.  After successful completion of such a study, the ISO must then issue "Section I.3.9 approval."  *See Snakeroot Solar*, 2025 ME 64, ¶¶ 7-10, 340 A.3d 99.  Such approval is issued when ISO New England determines that a proposed project will not have a significant adverse impact on the reliability or operating characteristics of the New England transmission system.  *Id.* ¶ 8 n.11.

6

[¶11] In April 2022, while the cluster study was in progress and after the 2021 NEB Amendment was enacted, Ellsworth Solar downsized the project from 4.98 megawatts to 1.99 megawatts.

[¶12] In October 2022, Versant provided Ellsworth Solar with an updated cost estimate reflecting the change in the project's capacity. Ellsworth Solar obtained the necessary Maine Department of Environmental Protection permits by January 24, 2023. Versant invoiced Ellsworth Solar for the costs of interconnection equipment and construction, and on February 17, 2023, Ellsworth Solar completed payment of the full amount it owed Versant for interconnection. The City of Ellsworth issued the local zoning permit required for the project on February 24, 2023. Ellsworth Solar started tree clearing and construction in March 2023.

[¶13] Versant began procuring the necessary equipment for interconnection on April 18, 2023. At a project kickoff meeting the following month, Versant informed Ellsworth Solar that the tariff meter and regulator were experiencing long lead times. In June 2023, Versant sent Ellsworth Solar a construction schedule with a projected COD of February 11, 2025—after the

2024 COD deadline.[4]  Ellsworth Solar was informed of delays caused by trouble procuring the meter and elected to postpone construction.

[¶14]  The meter arrived in late 2023, earlier than Versant had anticipated.  Shortly thereafter, in February 2024, Ellsworth Solar resumed construction.  Delivery of the regulator, however, was further postponed.

[¶15]  Ellsworth Solar continued construction and achieved mechanical completion on August 30, 2024, but was unable to meet the December 31, 2024 COD deadline because the necessary interconnection upgrades were not completed by that date due to the delay in the arrival of the voltage regulator.

C.  **Procedural History**

[¶16]  Ellsworth Solar filed a petition for a good cause exemption with the Commission on May 7, 2024, seeking exemption from the 2024 COD deadline provided by 35-A M.R.S. § 3209-A(9).  After intervention by, inter alia, the Office of the Public Advocate (OPA) and the taking of discovery, Commission staff issued an Examiner's Report recommending that the Commission grant the exemption.  That report stated that Ellsworth Solar had received its first

---

[4]  At that time, the amendment to the NEB program that applied to projects between one and two megawatts had not yet been enacted.  The Commission found that this was the first construction schedule that Versant communicated to Ellsworth Solar.  Ellsworth Solar argues that in March 2023 it received a previous schedule from Versant with the 2024 deadline.  As discussed *infra*, the Commission did not find sufficient evidence to support Ellsworth Solar's assertion.

8

construction schedule from Versant on March 27, 2023, and concluded that the delay causing Ellsworth Solar not to meet the 2024 deadline met the grounds for exemption from the deadline.

[¶17]    The OPA filed an exception to the report, and on December 13, 2024, the Commission issued an order voting two to one to deny the exemption.  Contrary to the hearing examiner's view that Ellsworth Solar had received an initial construction schedule from Versant showing completion within the 2024 deadline, the Commission found that Ellsworth Solar had not provided sufficient proof that it received such a schedule at that time; rather, the Commission found that the first time that Versant provided Ellsworth Solar with any construction schedule was in June 2023, and that schedule projected a COD of February 11, 2025.  Given this fact-finding, the Commission declined to grant Ellsworth Solar the exemption.

[¶18]  Pursuant to 65-407 C.M.R. ch. 110, § 11, Ellsworth Solar filed a petition for reconsideration or to reopen the record to admit additional evidence to prove that at a meeting in April 2023, Versant had communicated to Ellsworth Solar a schedule with a 2024 COD.  The Commission did not act

upon the petition, and it was therefore deemed denied on January 22, 2025.[5] Ellsworth Solar then filed a timely appeal pursuant to 35-A M.R.S. § 1320 (2025).

## II. DISCUSSION

[¶19]    On appeal, Ellsworth Solar advances three arguments: (A) Ellsworth Solar received a schedule from Versant on April 5, 2023, with a 2024 COD, and the notice from Versant in June 2023, estimating a February 2025 COD due to delays in equipment receipt and the surrounding circumstances resulting in an inability to meet the 2024 deadline, met the statute's definition of an unexpected, external delay supporting a good cause exemption; (B) the Commission's denial of the petition based on Ellsworth Solar's lack of sufficient proof of the receipt of an initial schedule from Versant within the 2024 deadline was arbitrary because previously the Commission had not announced such a requirement and, looking at the Commission's articulated reasoning in previous grants of exemptions, Ellsworth Solar should have been granted an exemption; and (C) the Commission erred in not granting Ellsworth Solar's request to reopen the record.

---

[5]  The rules of procedure applicable to Commission proceedings provide that "[a] petition for rehearing, reopening or reconsideration not granted within 20 days from the date of filing is denied." 65-407 C.M.R. ch. 110, § 11.

10

**A.** **The Commission's finding that Ellsworth Solar did not meet its burden of proof to show that it received an initial schedule with a COD within the 2024 deadline is supported by substantial evidence in the record, and the Commission's interpretation of the statutory text as permitting the Commission not to grant an exemption in the absence of such proof was reasonable.**

    **1.** **The Commission's fact-finding is supported by substantial evidence in the record.**

[¶20]  We accept the Commission's findings of fact unless they are not supported by substantial evidence in the record, meaning any competent evidence in the record. *Me. Coal. to Stop Smart Meters v. Pub. Utils. Comm'n*, 2023 ME 8, ¶ 7, 288 A.3d 1195. "When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference[.]" *Douglas v. Bd. of Trs. of the Me. State Ret. Sys.*, 669 A.2d 177, 179 (Me. 1996).

[¶21]  The parties agree that in June 2023, Versant told Ellsworth Solar that completion would not occur within the 2024 deadline.  The record reflects that Versant's manager for the project contacted Ellsworth Solar via email on March 30, 2023, with no indication in that email that a construction schedule was included.  Ellsworth Solar and the project manager then met on April 5, 2023, and there is no evidence that Versant provided a construction

schedule in subsequent emails between Ellsworth Solar and the project manager following that meeting. In a June 5, 2023, email, the project manager stated that he had "a preliminary schedule roughly put together" and he wanted "to get that over to [Ellsworth Solar] next week." On June 21, 2023, the project manager included a schedule in an email to Ellsworth Solar referring to the schedule as the "*initial* Versant Power Construction Schedule." (Emphasis added.) In a data request, Versant stated that it provided Ellsworth Solar with the first construction schedule in June 2023—this schedule showed a COD of February 11, 2025.

[¶22] To support its position that Versant previously told Ellsworth Solar that the deadline would be met, Ellsworth Solar cited an email that Versant sent to Ellsworth Solar on April 11, *2024* showing a 2024 COD date, which Versant indicated that it was providing to Ellsworth Solar "for good cause exemption purposes."

[¶23] Put simply, the Commission was not compelled on this record to believe that in April 2023 Ellsworth Solar received a schedule indicating an initial 2024 deadline. It did not have to believe that the schedule received "for good cause exemption purposes" a year later was in fact received a year earlier.

12

This record does not compel a contrary conclusion to the exclusion of any other inference.

> **2. The statutory text allowed the Commission to deny an exemption when the initial construction schedule that Ellsworth Solar received did not establish that the project would meet the 2024 deadline.**

[¶24]  We apply the plain text of a statute if it is clear, and if it is not, we defer to the Commission's interpretation if it is reasonable. *See Competitive Energy Servs. LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶¶ 15-18, 818 A.2d 1039.

[¶25]  As noted *supra* ¶ 4, the statutory text permits an exemption "due to external delays outside of the entity's control, which the commission may grant if it finds that, without the external delays, the entity could reasonably have been expected to meet the requirements."  35-A M.R.S. § 3209-A(7).  As noted in *Snakeroot Solar*, the ordinary, expected timeline for completion can be lengthy, and we upheld the Commission's interpretation of an unexpected, external delay to mean one outside of this lengthy process, and in affirming the Commission's denial of the exemption, we noted that in *Pembroke Solar*, the Commission had granted the exemption based on a last-minute delay. *Snakeroot Solar*, 2025 ME 64, ¶¶ 29, 42, 340 A.3d 99; *see supra*, ¶¶ 6-7.

[¶26]  If a developer is given an initial schedule that reflects that the 2024 deadline will not be met, then it is reasonable for the Commission to conclude

that the timeline contained in that initial schedule reflects the ordinary, lengthy, expected time period needed for completion of that project—whether we look to the plain text of the statute, our interpretation of that language in *Snakeroot Solar*, or we defer to a reasonable interpretation of the statute by the Commission.

[¶27]  Finally, the statute's employment of discretionary "may" language is also instructive as to the ability of the Commission to deny exemptions absent indisputable proof of an initial schedule reflecting an expected completion date within the deadline.  We noted in *Snakeroot Solar* that the purpose of the exemption was narrow, given the adverse impact that the expansive development of projects was having on rates.  2025 ME 64, ¶¶ 31-33, 340 A.3d 99.  We also noted that the "may" language in the statutory text reflected that the decision of whether to grant the exemption lay "in the agency's sole discretion."  *Id.* ¶ 34 (quotation marks omitted).

[¶28]  In sum, the Commission could reasonably find that Ellsworth Solar did not provide sufficient proof of receipt of an initial schedule showing an expected completion date within the applicable deadline and could reasonably conclude that, absent such proof, an exemption is not warranted.

14

**B.    The Commission's denial of Ellsworth Solar's exemption was not arbitrary.**

[¶29]  A Commission decision cannot be arbitrary.  *See NextEra Energy Res., LLC v. Me. Pub. Utils. Comm'n*, 2020 ME 34, ¶ 20, 227 A.3d 1117.  Ellsworth Solar argues that the Commission's denial of its petition was arbitrary because it was inconsistent with Commission precedent, citing *Pembroke Solar LLC*, Request for Good Cause Exemption Pursuant to 35-A M.R.S. § 3209-A, No. 2023-00304, Order (Me. P.U.C. June 20, 2024), *available at* 2024 WL 3201069, and *Ellsworth Renewables, LLC*, Request for Good Cause Exemption Pursuant to 35-A M.R.S. § 3209-A, No. 2023-00333, Order (Me. P.U.C. Sept. 25, 2024), *available at* 2024 WL 4332768.[6]

[¶30]    As noted in *Snakeroot Solar*, *Pembroke Solar* involved an "eleventh-hour, unanticipated change" in the utility's equipment procurement schedule.  *Snakeroot Solar*, 2025 ME 64, ¶ 42, 340 A.3d 99.  The record reflected initial early estimates of completion by April 2024.  *Pembroke Solar LLC*, 2023 WL 3201069, at *4 (June 20, 2024).  Similarly, in *Ellsworth Renewables*, the developer received an initial construction schedule with an estimated in-service date of April 17, 2024.  *Ellsworth Renewables*, 2024 WL 4332768, at

---

[6] Ellsworth Solar and Ellsworth Renewables are two different entities.

*5 (Sept. 25, 2024). In contrast, accepting the Commission's findings, Versant's initial schedule gave Ellsworth Solar a post-deadline date for completion.

[¶31] Ellsworth Solar does not point to any decision by the Commission granting an exception despite evidence of an initial completion date after the 2024 deadline. Given that the Commission's declination to grant exemptions absent significant proof of an initial completion estimate within the 2024 deadline constitutes a reasonable position for the Commission to take, consistent with the purpose and text of the statute,[7] the Commission did not act arbitrarily in declining to grant Ellsworth Solar an exception.[8]

---

[7] In its brief, the Commission pointed out that its precedent did not indicate that it had granted exemptions in the absence of sufficient proof of an initial schedule indicating completion before the 2024 deadline. In its reply, Ellsworth Solar did not dispute this point but rather argued that indications in the record *after* the initiation of the project could be understood as indicating that the project could meet the deadline. But, as noted *supra* ¶ 28, it was reasonable for the Commission to deem the delay not unexpected within the meaning of the statute in the absence of sufficient proof from the inception of the project that the deadline would be met.

[8] Ellsworth Solar argues that the denial of the exemption was impermissible because requiring incontrovertible proof of an initial schedule estimating completion before the 2024 deadline constitutes a new interpretation of the statute by the Commission. *See Cassidy Holdings, LLC v. Aroostook Cnty. Comm'rs*, 2023 ME 69, ¶ 16 n.4, 304 A.3d 259 (noting that an agency is free to change its mind in its interpretation of a statute, "[b]ut if it does so, the agency must acknowledge that it is making a change, explain why, and give due consideration to the serious reliance interests on the old policy."). As noted *supra* ¶ 30, however, there was no inconsistency between the Commission's ruling here and its precedent.

## C.      The Commission was not required to reopen the record.

[¶32]  The Commission's denial of Ellsworth Solar's petition to reopen the record is reviewed for abuse of discretion.  *Mech. Falls Water Co. v. Pub. Utils. Comm'n*, 381 A.2d 1080, 1105-06 (Me. 1977).

[¶33]  In its petition to reopen the record, Ellsworth Solar sought to submit three items: a new affidavit from the Versant project manager in which he avers that at the April 5, 2023 meeting, he "discussed . . . the anticipated COD for the project on November 25, 2024"; an internal Ellsworth Solar email in which the author of the email states "[n]ow forecasting COD out to end Q2 2024"; and what Ellsworth Solar characterizes as Microsoft Teams meeting invites between Ellsworth Solar and Versant dated April and May 2023, which do not present the contents of any such meetings.

[¶34]  To advance its petition for an exemption, it was incumbent upon Ellsworth Solar to prove that there was an unexpected, external delay causing an inability to complete the facility by the 2024 deadline.  As noted *supra* ¶ 26, if the initial estimated schedule was outside the 2024 deadline, then it was logical to conclude that the delay would not be deemed unexpected.  Hence, Ellsworth Solar had every incentive to provide all its evidence that the initial schedule provided by Versant estimated completion within the 2024 deadline.

[¶35]  In its petition to reopen, Ellsworth Solar did not indicate that it could not have previously supplied the evidence it sought to include in the record.  Nor did Ellsworth Solar explain how good cause existed to allow the expansion of the record to include a sworn statement not subject to cross-examination.  *See* 5 M.R.S. § 9057(5) (2025) ("No sworn written evidence shall be admitted unless the author is available for cross-examination or subject to subpoena, except for good cause shown.")

[¶36]  The Commission did not abuse its discretion in declining to reopen the record to admit these materials belatedly proffered by Ellsworth Solar.

### III.  CONCLUSION

[¶37]  Ellsworth Solar's plight is not devoid of grounds for sympathy.  It began development of a 4.98-megawatt facility based on the law in place at the time.  The law then changed, causing it to lower the capacity of the facility.  It was then required to meet new requirements to procure the remaining benefits of its investment.  It also does not appear that Ellsworth Solar was responsible for any of the causes of the facility not being completed by the 2024 deadline.

[¶38]  But Ellsworth Solar had no vested right in the law as it originally stood and, given the applicable statutory language, the contents of this record and our deferential standard of review, the Commission did not err or abuse its

discretion in declining to grant Ellsworth Solar a good cause exemption or to reopen the record.

The entry is:

Judgment affirmed.

---

Juliet T. Browne, Esq., and Hans C. Eysenbach, Esq. (orally), Verrill Dana, LLP, Portland, for appellant Ellsworth ME Solar, LLC

Daya J. Taylor, Esq. (orally), and Amy B. Mills, Esq., Maine Public Utilities Commission, Augusta, for appellee Maine Public Utilities Commission

Heather B. Sanborn, Esq., Richard P. Hevey, Esq., Brian T. Marshall, Esq. (orally), Office of the Public Advocate, Augusta, for appellee Office of the Public Advocate

Public Utilities Commission case number 2024-00108
FOR CLERK REFERENCE ONLY